Baldwin, J.
delivered the opinion of the Court.
In the written contract on which this action is founded, there is no express covenant on the part of White, the appellant’s intestate, to deliver salt to Ton-cray, the appellee, for transportation ; but the agreement of Toncray to do the transportation, and of White to pay him therefor, import an implied covenant on the part of White to allow and permit Toncray to transport the salt, and to furnish him with the agreed quantities for that purpose. The implied covenant of White in this respect is the correlative of the express covenant of Toncray. The latter agreed to transport for White from Saltville, from 1200 to 6000 barrels of salt annually, for three years from the date of the contract, water permitting ; from which is to be inferred an agreement on the part of White, that Toncray should receive so much salt annually at Saltville for transportation, if the state of the water permitted it. If the condition of the navigation should be such that the salt could not be transported, then Toncray was absolved from the obli *189 gation to transport it; and in the like event, White was absolved from the obligation to deliver it. Any right of action on the part of Toncray, upon this contract, would be founded upon his claim to the stipulated compensation for his actual transportation of the salt; or upon his claim to damages for having been prevented from transporting it, by the failure or refusal of White to deliver it. In the latter case, if the condition of the water did not allow his transportation of the salt, the delivery of it to him by White could have availed him nothing. The reciprocal liabilities, therefore, of Ton-cray and White, in relation to the transportation of the salt, were both dependent upon the same condition : if the state of the navigation did not allow the transportation of the salt, White could have no action against Toncray for failing to transport it, and Toncray could have no action against White for failing to deliver it.
The agreement of the parties was not for the transportation of an aggregate amount of salt, in the course of three years; but for the transportation of from 1200 to 5000 barrels of salt in each year of that period. This Court, looking to the nature and object of the contract, held, on the former appeal, that the electiou of the annual quantity, within those limits, was with White the manufacturer, and not with Toncray the carrier. The election of White was, however, determined as to any one year, by the quantity delivered by him in that year; the whole of which Toncray was at liberty to transport in the same year; and if he did so, his right in regard to the quantity to be transported the next year was not thereby affected. But there was a corresponding duty on the part of Toncray, to transport in any one year the whole quantity received by him for that year; and his inability or refusal to do so, could not but affect his right in regard to the quantity to be received the next year.
*190 Let us suppose that in the first year of the contract, Toncray had received from White for transportation the minimum, or the maximum quantity provided for by the agreement, that is to say, either 1200 barrels or 5000 barrels, and that the state of the navigation prevented him from transporting any of it, and that the whole of it remained in his hands at the end of that year. It is obvious that the purposes of both parties would have been defeated in regard to that year. White would have lost his contemplated markets for that year, and Toncray would have lost his compensation for transportation ; and the salt would have been White’s salt in the hands of Toncray. Still Toncray would have a right to transport at least 1200 barrels of White’s salt in the second year; but having it already in his hands, he would have no right to call upon White for the delivery to him of 1200 barrels more. The transportation of what he already had on hand would be a performance of his contract for the second year, and White’s permitting him to do it would be equivalent to an actual delivery by him of the same quantity in the second year. And the same result would have followed the like state of things at the end of the second year.
And so if Toncray had wilfully failed to transport the salt received by him for the first or the second year, he would be equally bound to transport it in the second or third year; and could not withhold it, and at the same time-call upon White to supply what he had already in his own hands.
The construction of the contract, in this regard, contended for by Toncray. would be unreasonable and unjust ; and would have enabled him to defeat the whole purpose of his employer in the agreement for transportation, which was the annual supply of the contemplated markets. It would have put it in his power to defer the transportation of any part of the salt until near the end of the third year, and then flood the markets with *191 the whole of it at once. And it would have made his interests as carrier paramount to those of his employer.
In asserting a breach of the contract by White, whether by refusing to pay for transportation, or by refusing to permit transportation, Toncray must confine himself to a single year, or declare distributively for the several years: otherwise, as may be inferred from what has been already said, there must be inevitable difficulty in ascertaining the rights and obligations of the parties by pleading, and in making up the proper issues of fact. Indeed, it is manifest that much confusion and perplexity have been introduced into the cause, by the mode of declaring adopted by the appellee; who has sought to treat the contract as entire, so far as regards his own obligations; but distributive, so far as regards the obligations of White.
Some obscurity seems also to have been introduced into the cause, by the idea on the part of the appellee, that White was bound to do certain acts preliminary to the transportation of the salt by Toncray ; for example, that White ought to have given notice to Toncray to come and do the transportation, and ought also to have given him notice at what places the salt should be landed, and to what consignees it should be delivered. But this is so far from being correct, that it is obvious in regard to this action by Toncray, (however it might be in an action or plea by White,) the first duty was to be performed by Toncray. It was his business to attend at Saltville, at such times as suited his convenience, to receive the salt from time to time, as he was ready, and commence its transportation ; and he ought to have required not only the delivery of the salt, but the instructions requisite as to its points of transportation, so far as the same were nndesignated by the contract; and if he rashly commenced the transportation without requiring such instructions, any loss to him thereby occasioned is attributable to his own fault.
*192 Some difficulty has also been occasioned by certain averments in the declaration, intended to affect by parol the terms of the contract under seal, in regard to limits . . 0 and relative prices of transportation, and a point of debarkation, by means of a new verbal agreement between the parties, enuring to the advantage of the appellee, and of mandatory directions to him by White, to which he yielded, operating to his prejudice. But these are matters which cannot be properly introduced into this action, for the recovery or enhancement of damages in favour of the appellee; and any redress to which he may be entitled by reason thereof must be sought by other remedies.
The principles above declared will serve to indicate objections to a greater or less extent to every count of the appellee’s declaration, and the correctness of the Circuit Court’s decision sustaining the appellant’s demurrer to the fourth count, and its incorrectness in overruling her demurrers to the other four counts. And these views render it inexpedient to notice points ruled by the Circuit Court in rejecting pleas, admitting evidence, and refusing instructions; for as the cause must be sent back for a new trial and new pleadings, we cannot foresee how far those points may again arise in the new state of the pleadings and evidence. To this remark an exception exists in relation to the question as to the extent of the credit to which the appellant is entitled, on account of the loss of salt in the river, in the course of its transportation by the appellee, occasioned by the “staving” or sinking of boats; a question which will doubtless be presented at the new trial, whatever may be the state of the pleadings. On this point therefore we express the opinion, that the appellant can be entitled to no compensation for such loss, beyond the stipulated damages provided for by the contract in such a case. There is a general provision in the agreement, that Toncray should be responsible for salt received for *193 transportation, and not delivered by him at a prescribed rate; which general provision extended his liability beyond that of common carriers: and the loss of salt in the river, by staving or sinking, was intended by the parties to be an exception to that general provision as to the rate, and fixed the liability of Toncray for such loss at a lower rate, and was designed to exclude any question of liability which might otherwise arise in regard to it, out of the general law of carriers. It waives, as well as the general provision, all questions founded upon care or negligence; and provides the simple rule of actual loss by staving or sinking, probably because Toncray had an interest, as well as White, in the safe transportation of any salt which might be so lost.
Judgment reversed with costs, verdict set aside, demurrers to declaration sustained, and cause remanded for a new trial, with leave to the parties to plead de novo.